UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

CARLOS PORTALATIN,

                 Petitioner,

    - against-

HAROLD GRAHAM, Superintendent,
Auburn Correctional Facility,

                 Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM
AND ORDER
06 CV 5002 (JG)

A P P E A R A N C E S :

       JOSHUA MICHAEL LEVINE, ESQ.
           Appellate Advocates
           2 Rector Street
           10th Floor
           New York, New York 10006
           Attorney for the Petitioner

       CHARLES J. HYNES
           District Attorney, Kings County
           350 Jay Street
           Brooklyn, New York 11201
       By:  Ann Bordley
           Assistant District Attorney
           Attorney for the Respondent

JOHN GLEESON, United States District Judge:

       Carlos Portalatin petitions for a writ of habeas corpus, challenging the sentence

imposed in state court pursuant to New York's discretionary persistent felony offender statute,

N.Y. Penal Law § 70.10. Because that sentence violated Portalatin's constitutional right to a jury

trial, the petition is granted.

BACKGROUND

A.    Portalatin's Conviction and Sentence Pursuant to
      New York's Persistent Felony Offender Statute

The evidence at trial established that on July 12, 2002, Portalatin carjacked Stephen Francis at gunpoint and forced him to drive to an empty street in the Williamsburg section of Brooklyn.  After a struggle, Francis escaped and Portalatin drove away in the car. Portalatin testified that he and Francis had engaged in consensual sexual conduct, for which Portalatin understood he would be paid.  He further testified that when Francis did not pay him, he became upset and sped away in Francis's car.  Portalatin denied having a gun or robbing Francis.  The jury rejected his testimony, finding Portalatin guilty of robbery in the first degree and kidnapping in the second degree, both class B felonies.

The prosecutor requested that Portalatin be sentenced as a persistent felony offender.  New York's discretionary persistent felony offender statute, N.Y. Penal Law § 70.10, allows -- but does not require -- a sentencing court to impose a class A-I felony sentence (rather than the sentence otherwise available for the offense of conviction) when the court (1) has found "that a person is a persistent felony offender," and (2) "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest."  N.Y. Penal Law § 70.10(2).  The permissive nature of the enhanced penalty accounts for the fact that § 70.10 is known as the "discretionary" persistent felony offender provision.[1]

---

[1]    New York has another persistent felony offender statute -- the persistent *violent* felony offender provision in N.Y. Penal Law § 70.08.  Practitioners of criminal law in New York often refer to that persistent felony offender statute as the "mandatory" one.  It applies to defendants who stand convicted of a violent felony (as defined in N.Y. Penal Law § 70.02) and have previously been convicted of two or more violent felonies (as defined in N.Y.

As discussed in more detail below, before an enhanced sentence may be imposed pursuant to § 70.10, the prosecution must first prove beyond a reasonable doubt that the defendant is a persistent felony offender, that is, that he or she has previously been convicted of two or more felonies. N.Y. Crim. Proc. Law § 400.20(5).[2] If the sentencing court finds that the defendant is a persistent felony offender, it "must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted," § 400.20(9), *i.e.*, whether the history and character of the defendant and the nature and circumstances of his or her criminal conduct indicate that extended incarceration of the defendant will best serve the public interest. The prosecutor must prove the facts that pertain to the history and character of the defendant and the nature and circumstances of his or her criminal conduct by a preponderance of the evidence. *Id.* Only after making the required factual findings on the record may a court impose an enhanced sentence pursuant to § 70.10(2). *Id.* If a court terminates a persistent felony offender hearing without making the "necessary findings," the defendant may not be sentenced as a persistent felony offender. § 400.20(10).

Portalatin's previous felonies were (1) a 1995 conviction for attempted burglary in the second degree, and (2) a 1998 conviction for attempted criminal sale of a controlled substance in the fifth degree. At the sentencing hearing on April 28, 2003, Portalatin did not challenge the existence or the constitutionality of these convictions, and the court found that he

---

Penal Law § 70.04(1)(b)). Such defendants receive an indeterminate sentence of imprisonment, the maximum of which must be life. Minimum terms are prescribed by the statute and vary depending on the grade of the offense of conviction. *See* N.Y. Penal Law § 70.08(3). Under § 70.08, "the court *must* impose" an enhanced penalty once it finds that the predicate convictions occurred, *id.* at § 70.08(2) (emphasis added), hence the use of the term "mandatory" to describe that form of persistent felony offender enhancement. Section 70.08 is not at issue here.

[2]     Section 400.20 of the New York Criminal Procedure Law is the procedural statute by which sentences under § 70.10 of the Penal Law are imposed. From this point forward I refer to the statutes simply as § 70.10 and § 400.20, assuming knowledge that the former is in New York's Penal Law and the latter is in the Criminal Procedure Law. Both statutes are set forth in their entirety in the appendix to this Memorandum and Order.

"appear[ed] to be eligible for discretionary persistent felony offender adjudication" on that basis. S.Tr. 8-9.[3]

The court then proceeded to determine whether Portalatin's history and character and the nature and circumstances of his criminal conduct warranted an enhanced sentence and lifetime supervision. It considered a report by the Osborne Association (submitted by defense counsel in mitigation of sentence), the probation report, a letter submitted by the district attorney, and the evidence at trial. S.Tr. 19. The court made the following findings on the record: (1) the crime must have been a "truly terrifying experience" for the victim; (2) there was a gun involved; (3) Portalatin's history did not support his claims of innocence or excuse his conduct; (4) beginning in 1989, Portalatin failed to take advantage of drug treatment opportunities; (5) Portalatin committed crimes immediately upon release from prison after prior convictions; (6) Portalatin was inclined to "prey upon others;" (7) Portalatin could not control his problems; (8) Portalatin did not take advantage of employment opportunities and family support; and (9) Portalatin made efforts to avoid the consequences of his actions. S.Tr. 19-22.

Based on those findings, the court elected to sentence Portalatin as a persistent felony offender. Portalatin received a sentence of 18 years to life in prison on each of the two counts of conviction, to run concurrently. S.Tr. 22.

B.     The Direct Appeal

Portalatin appealed his conviction, arguing that (1) the prosecutor committed misconduct during the trial; (2) his sentence violated the jury trial principle set forth in *Apprendi v. New Jersey*, 530 U.S. 446 (2000), *Ring v. Arizona*, 536 U.S. 584 (2002), and *Blakely v.*

_____

[3]     "S.Tr." refers to the pages of the transcript of the April 28, 2003 sentencing hearing.

4

*Washington*, 542 U.S. 296 (2004); and (3) the sentencing judge did not follow the procedures required by § 400.20.  On May 16, 2005, the Appellate Division affirmed Portalatin's judgment of conviction.  *People v. Portalatin*, 795 N.Y.S.2d 334 (2d Dep't 2005).  The court found that the prosecutorial misconduct claim was unpreserved for appellate review and without merit, since "the prosecutor's questions and remarks were entirely within the bounds of fair comment."  *Id.* at 334.  The court also rejected both claims related to the sentence as "unpreserved for appellate review and, in any event, without merit."  *Id.*  On July 6, 2005, the New York Court of Appeals denied Portalatin leave to appeal from the decision of the Appellate Division.  *People v. Portalatin*, 3 N.Y.3d 793 (2005) (Ciparick, J.).  Portalatin did not file a petition for a writ of certiorari with the United States Supreme Court .

C.     The Instant Petition

        Portalatin now seeks a writ of habeas corpus on the ground that the state violated his Sixth Amendment right to a jury trial, guaranteed to Portalatin by the Fourteenth Amendment, when it sentenced him as a persistent felony offender pursuant to § 70.10.

DISCUSSION

A.     The Procedural Bar

        The Appellate Division rejected Portalatin's claim as both unpreserved for appellate review *and* lacking in merit.  795 N.Y.S.2d at 334.  The use of the conjunctive in the habeas setting is critical.  Had the court used "or" instead, its ruling would have to be considered solely a decision on the merits.  *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000).  But the state court holding here qualifies as a conclusion that the claim was procedurally defaulted, which potentially has special consequences on habeas review.  *See Harris v. Reed*, 489

U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision); *Fama*, 535 F.3d at 810 n.4.

As a general matter, the Supreme Court of the United States will not consider an issue of federal law on review of a state court judgment if that judgment also rests on an adequate and independent state ground. This doctrine, which can deprive the Supreme Court of jurisdiction to review a state court judgment under 28 U.S.C. § 1257, has been imported into the habeas context as a matter of comity to limit the availability of habeas relief where the federal claim has been procedurally defaulted in state court. *See Coleman v. Thompson*, 501 U.S. 722, 730-32 (1991). Because a procedural default under state law constitutes an adequate and independent state ground for deciding the claim against the petitioner, federalism concerns permit a federal habeas court to review a procedurally barred claim on the merits only if the petitioner shows cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that a failure to consider the claim will result in a fundamental miscarriage of justice. *Id.* at 750.

However, procedural default is not a jurisdictional matter. As mentioned, the concept is based on considerations of comity. As a result, it can be waived by the state. *See Mask v. McGinnis*, 233 F.3d 132, 137 (2d Cir. 2000). Though habeas courts are authorized to raise the issue *sua sponte*, they are not required to do so. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Moreover, unlike a waiver of the exhaustion requirement, which after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") must be express, *see* 28 U.S.C. §

2254(b)(3), a procedural default may be waived by the state's mere failure to assert it. *See, e.g.,* *Mask*, 233 F.3d at 137.

Though respondent has included the Appellate Division's reliance on procedural grounds in his description of the procedural history of the case, he has opposed the petition solely on the merits of the Sixth Amendment claim. He may well have concluded that comity and federalism are better served by a quick resolution of whether § 70.10 continues to survive Sixth Amendment scrutiny (as applied through the Fourteenth Amendment) in light of recent Supreme Court precedent. *See Washington v. James*, 996 F.2d 1442, 1448-50 (2d Cir. 1993) (identifying principles of comity and federalism as grounds for courts to decline to address procedural default *sua sponte*). Whatever accounts for respondent's decision not to assert a procedural default defense, I see no reason not to grant the parties' joint request that I resolve the merits of their Sixth Amendment dispute.

B.    The Standard of Review

AEDPA narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, federal habeas relief may be granted only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[4] The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the

---

[4]      Habeas relief is also warranted where the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). That subsection is not relevant to Portalatin's petition.

relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "Under the latter standard, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

C.    Portalatin's Sixth Amendment Claim

Portalatin argues that the persistent felony offender statute at issue here violates the Sixth Amendment principle that any fact (other than the fact of a prior conviction) that increases the penalty for a crime must either be admitted by the defendant or proved to a jury beyond a reasonable doubt. Portalatin was convicted of kidnapping in the second degree and

robbery in the first degree, both class B felonies. *See* N.Y. Penal Law §§ 160.15(4); 135.20. The maximum sentence he faced on each of those counts was 25 years. *See Id.* § 70.00(2) ("For a class B felony, the term shall be fixed by the court, and *shall not exceed twenty-five years*.") (emphasis added). The minimum sentence Portalatin faced would also have been fixed by the court, and would not have been "less than one year nor more than one-third of the maximum term imposed." *Id.* § 70.00(3)(b).[6] The application of §70.10 increased the maximum penalty for Portalatin's crime to life, and Portalatin was sentenced on each count to an indeterminate prison term that could reach that maximum. As discussed below, that sentence was based on facts found by the sentencing judge during the sentencing proceeding, that is, facts (other than the fact of Portalatin's prior convictions) that were neither admitted by him nor presented to the jury and proved beyond a reasonable doubt.

1.    *The Relevant Supreme Court Authority*

The Supreme Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The full impact of that holding was not immediately apparent for two related reasons. One was the fact that Charles Apprendi's sentence of 12 years, imposed pursuant to New Jersey's hate crime law, exceeded the ten-year maximum sentence set forth in the penal statute prohibiting second degree possession of a firearm for an unlawful purpose, the law he pled guilty to violating. *Id.* at 469-71. The second was the language used by the Supreme Court in setting aside the sentence, which suggested that sentence

_____

[6]    Because Portalatin had in the past been convicted of two felonies, one of which New York law defines as a "violent felony," respondent asserts that he was also subject to sentencing as a second violent felony offender pursuant to N.Y. Penal Law § 70.04(1)(a). Had he been sentenced pursuant to that provision, Portalatin would have faced a prison term of ten to 25 years based on the jury's verdict. *See* N.Y. Penal Law § 70.04(3)(a).

increases based on facts found by judges do not violate the Sixth Amendment jury-trial right so

long as the final sentence is within the maximum set by the statute the defendant violated:

> We should be clear that nothing in this history [of the common law of sentencing] suggests that it is impermissible for judges to exercise discretion – taking into consideration various facts relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.

*Apprendi*, 530 U.S. at 481.

In specific reliance on that language and on the fact that Apprendi's sentence

exceeded the maximum sentence set forth in the criminal statute he violated, the Second Circuit

rejected Sixth Amendment challenges to upward adjustments of federal Guidelines ranges based

on facts found not by juries, but by judges. *See United States v. Garcia*, 240 F.3d 180, 182-84

(2d Cir. 2001); *see also United States v. Norris,* 281 F.3d 357, 360-61 (2d Cir. 2002) ("*Apprendi*

itself governs if a factual determination results in a sentence that exceeds a statutory maximum

. . . . [W]e do not believe [the Guidelines] ranges are statutory maximums for purposes of

applying the rule of *Apprendi*."). Every other court of appeals to address the issue agreed with

that reading and application of *Apprendi*. *See Garcia*, 240 F.3d at 184 (citing cases).

But *Blakely v. Washington*, 542 U.S. 296 (2004), made it clear that they were all

wrong. *Blakely* established that the "statutory maximum" for purposes of the Sixth

Amendment's jury trial right is *not* always the maximum set forth by the penal statute violated by

the defendant. In Blakely's case, that maximum was ten years (for second degree kidnapping)

and Blakely had been sentenced to only 90 months. 542 U.S. at 299-300. Still, the Supreme

Court held that the sentence was unconstitutional, because a sentence higher than the 49-53

month range provided by Washington's sentencing guidelines was authorized only upon the

sentencing court's finding of an aggravating circumstance (in Blakely's case, "deliberate

cruelty"). *Id.* at 303. In language that foretold doom for the federal Guidelines, the Court wrote:

> Our precedents make clear . . . that the "statutory maximum" for *Apprendi*
> purposes is the maximum sentence a judge may impose *solely on the basis*
> *of the facts reflected in the jury verdict or admitted by the defendant*. . . .
> In other words, the relevant "statutory maximum" is not the maximum
> sentence a judge may impose after finding additional facts, but the
> maximum he may impose *without* any additional findings.

*Id.* at 303-04.[5]

Furthermore, *Apprendi* and *Blakely* make it clear that impermissible

"factfindings" for Sixth Amendment purposes include generalized assessments of offenders as

well as more specific factual determinations about offenses. *See Blakely*, 542 U.S. at 305

("Whether the judge's authority to impose an enhanced sentence depends on finding a specified

fact (as in *Apprendi* ), one of several specified facts (as in *Ring* ), or any aggravating fact (as

here), it remains the case that the jury's verdict alone does not authorize the sentence."). That is

because *any* finding that "if found, exposes the criminal defendant to a penalty exceeding the

---

[5] When that doom arrived seven months later in *United States v. Booker*, 543 U.S. 220 (2005), the
Court implicitly acknowledged that *Apprendi*'s emphasis on the applicable "statutory maximum" had led the lower
courts astray, but observed that any reliance on that language was misplaced:

> The Government correctly notes that in *Apprendi* we referred to any
> fact that increases the penalty for a crime *beyond the prescribed statutory*
> *maximum* . . . . The simple answer, of course, is that we were only
> considering a statute in that case; we expressly declined to consider the
> Guidelines. It was therefore appropriate to state the rule in that case in
> terms of a "statutory maximum" rather than answering a question not
> properly before us.

> More important than the language used in our holding in *Apprendi*
> are the principles we sought to vindicate.

543 U.S. at 238 (citations omitted).

maximum he would receive if punished according to the facts reflected in the jury verdict alone," *Apprendi*, 530 U.S. at 483, violates the Sixth Amendment.

2.    *A Description of § 70.10*

Unlike sentence enhancements based solely on prior convictions, such as the persistent violent felony offender provision in § 70.08, before a sentencing court may enhance a defendant's sentence under § 70.10, it must make two particularized findings about the defendant. The first is that the defendant is a "persistent felony offender," § 70.10(2), that is, a person who has been convicted of two or more felonies that were punished by a term of imprisonment greater than one year. § 70.10(1)(b). Any felony conviction, federal or state, counts. This aspect of the statute falls squarely within the narrow safe harbor for recidivism-based sentencing enhancements established by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and enshrined in *Apprendi*'s holding.

However, § 70.10 further requires that the court be "of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." § 70.10(2). This second finding must be announced formally and "set forth in the record." *Id.* According to the statute, only after making both findings is the court authorized, "in lieu of imposing the sentence of imprisonment" otherwise authorized, to impose the sentence of imprisonment authorized for a class A-I felony. *Id.*[7]

---

[7]    Section 400.20(1) explicitly confirms that these two steps are necessary by prohibiting an enhanced sentence unless the court: "(a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest."

Sentencing under the persistent felony offender provision is initiated by the court when information available to it indicates that the defendant has prior convictions that satisfy the first step of the inquiry and the court is of the opinion that the enhanced sentence "may be warranted." § 400.20(2). The court then issues an order, with at least 20 days' notice to the defendant, directing a hearing to determine whether the defendant should receive the enhanced sentence. §§ 400.20(3)-(4). The order must include a statement setting forth the defendant's prior convictions and the "factors in the defendant's background and prior criminal conduct which the court deems relevant for the purposes of sentencing." §§ 400.20(3)(a)-(b).

After receiving notice of the facts upon which the court is considering enhancing the sentence, the defendant can introduce evidence at a hearing contesting the prior convictions and the other allegations in the notice. §§ 400.20(6)-(7). The burden of proof is on the prosecutor, but both the applicable standard and the method of proof depends on what is challenged. § 400.20(5). The government must prove the prior convictions beyond a reasonable doubt with evidence that would be admissible at trial. *Id.* However, "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct" need only be proved by a preponderance of the evidence, and the rules of evidence do not apply to that step of the hearing. *Id.*

Section 400.20(9) makes clear that the second step of the adjudication must involve judicial findings of fact:

> At the conclusion of the hearing the court must make a finding as to whether or not the defendant is a persistent felony offender and, upon a finding that he is such, *must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted*. If the court both finds that the defendant is a persistent felony offender and is of the opinion that a persistent felony offender sentence is

13

> warranted, it may sentence the defendant [as though he were convicted of
> a class A-1 felony].

*Id.* (emphasis added). The court can, in its sole discretion and at any time, stop the hearing "without making any finding." § 400.20(10). However, "the defendant may not be sentenced as a persistent felony offender" unless the court "makes the *necessary findings*." *Id.* (emphasis added).[8]

     3.    *The Constitutionality of § 70.10*

Section 70.10 violates the Sixth Amendment because it allows judges to enhance a criminal defendant's sentence beyond what the jury verdict alone would allow if, and only if, such enhancement is supported by judicial findings other than the fact of prior convictions. These findings related to the history and character of the defendant and the nature and

---

[8]    New York courts interpreting the persistent felony offender law and its procedural counterpart have consistently enforced the requirement of specific factual findings at this second step. *See, e.g., People v. Bingham*, 806 N.Y.S.2d 768, 769 (3d Dep't 2005) (upholding sentence where sentencing court found that defendant had previously been convicted of at least two felonies *and* had considered evidence regarding defendant's history and character, as well as the nature and circumstances of his criminal conduct); *People v. Perry*, 800 N.Y.S.2d 25, 26 (2d Dep't 2005) (finding that sentencing court had "fully complied with the procedural mandates of [N.Y.] CPL 400.20 in holding a persistent felony offender hearing," and that the court's conclusion "that the nature of the defendant's criminal conduct, his history, and his character warranted extended incarceration and lifetime supervision is amply supported by the record") (citations omitted); *People v. Garcia*, 700 N.Y.S.2d 44, 45 (2d Dep't 1999) (noting that "[b]efore imposing sentence, the court is obligated to set forth on the record the reasons it found this second element satisfied," and vacating sentence where it was "impossible to ascertain what conduct or circumstances the [sentencing court] relied upon in determining that the second prong of the persistent felony offender analysis was satisfied").

    Respondent extrapolates from four cursory affirmances of § 70.10 sentences the following contention: "Prior to [*People v. Rivera*, 5 N.Y.3d 61 (2005)], there were many Appellate Division decisions . . . which . . . upheld persistent felony offender sentences that were based *solely* on the number and nature of the defendants' prior criminal convictions." Resp. Mem. 18-19 (emphasis added) (citing *People v. Hart*, 698 N.Y.S.2d 357 (3d Dep't 1999); *People v. Ward*, 649 N.Y.S.2d 865 (4th Dep't 1996); *People v. Catten*, 625 N.Y.S.2d 529 (1st Dep't 1995); and *People v. Drummond*, 480 N.Y.S.2d 48 (2d Dep't 1984)). It is a misuse of precedent to argue from those perfunctory opinions, which refer only to prior convictions in finding enhanced sentences to be within the broad discretion of the sentencing judge, that the sentencing court made no other factfindings.

    More importantly, the argument misapprehends the *Apprendi* rule. Even if a court were to base the § 70.10 finding that extended incarceration and lifetime supervision was "warranted" exclusively on prior convictions (which is not the case here, as respondent concedes), the finding that the enhancement is warranted would nevertheless be a finding of fact "other than the fact of a prior conviction," and thus would be subject to the *Apprendi* rule.

circumstances of his or her criminal conduct are "factfindings" for *Apprendi* purposes, since they "expose[] the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone," *Apprendi*, 530 U.S. at 483. That the statute uses the term "opinion" to describe the end result of the second part of the process means little, for "the relevant inquiry is one not of form, but of effect," *Apprendi*, 530 U.S. at 494, and the effect of New York law is to condition the enhanced sentence under § 70.10 on *findings of fact* made by the sentencing court by a preponderance of the evidence. The statutes themselves could not be clearer on this point. *See* § 400.20(9) (the sentencing court must "make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted").

Respondent contends that, by definition, a defendant is a "persistent felony offender," and thus eligible for the enhanced sentence authorized by § 70.10, if he has two prior felony convictions. According to respondent, the mere eligibility for persistent felony offender adjudication automatically alters the maximum punishment such that the maximum sentence for an A-I felony becomes applicable. Thus, respondent asserts, § 70.10 is simply a recidivism enhancement, spared from Sixth Amendment scrutiny by *Almendarez-Torres.*

But Portalatin was eligible for a life sentence in precisely the same way the defendant in *Ring* had become eligible for a death sentence upon being found guilty of first degree murder by a jury. In *Ring*, a "statutory provision requir[ed] the finding of an aggravating circumstance before imposition of the death penalty." *Ring*, 536 U.S. at 604. In light of that requirement, Arizona's claim that the defendant was sentenced within the range authorized by the jury's verdict was rejected, for it would reduce *Apprendi* to a "'meaningless and formalistic' rule

15

of statutory drafting." *Ring*, 536 U.S. at 604 (quoting *Apprendi*, 530 U.S. at 541 (O'Connor, J., dissenting)). Respondent's argument that the finding of two convictions, by itself, subjects defendants to an enhanced sentence under § 70.10 suffers from the same fatal defect. As in *Ring*, a state statute, § 400.20, sets forth procedures, including required factfindings, "that must be followed in order to impose the persistent offender sentence authorized by subdivision two of section 70.10." § 400.20(1). Defendants with two qualifying prior convictions may be *eligible* for extended jail terms and lifetime supervision, but they cannot *receive* such punishments absent something more. That something more -- judicial factfindings relevant to the question whether a persistent felony offender sentence is warranted -- violates their right to trial by jury of all facts essential to the enhanced punishment.

In this case, those factfindings included the following: the crime terrified the victim, the defendant failed to take advantage of substance abuse treatment opportunities, and the defendant had a history of parole revocations and bench warrants. Portalatin's 18 years-to-life sentence was based on those and other facts, other than the fact of his prior convictions, that were found by the sentencing court by a preponderance of the evidence. The court was not authorized by New York law to impose that sentence without first making those findings of fact. Accordingly, the state courts' rejection of the *Apprendi* claim in this case was contrary to clearly established federal law as determined by the Supreme Court.

In contending otherwise, respondent relies principally on two decisions of the New York Court of Appeals and one decision of the Second Circuit. His reliance on those cases, as discussed below, is unavailing.

D.       *People v. Rosen* and *Brown v. Greiner*

        The New York Court of Appeals first addressed § 70.10's impact on a defendant's

jury trial right in *People v. Rosen*, 96 N.Y.2d 329 (2001), *cert. denied*, 534 U.S. 899 (2001),

which flatly rejected an *Apprendi* challenge to a persistent felony offender sentence.  In *Rosen*, a

jury convicted the defendant of first degree sexual abuse, a class D felony with a maximum

sentence of seven years, and endangering the welfare of a child, a misdemeanor.  96 N.Y.2d at

333.  The court imposed an enhanced sentence of 25 years to life pursuant to § 70.10.  *Id*.  On

appeal, the defendant argued that his enhanced sentence violated his rights to trial by jury and to

an indictment setting forth the charge against him.  *Id*. at 333-34.  In rejecting the claim, the court

concluded that "[i]t is clear from the . . . statutory framework that the prior felony convictions are

the *sole determinate* [sic] of whether a defendant is subject to enhanced sentencing as a persistent

felony offender."  *Id*. at 335 (emphasis added).  As for the factual findings required by the second

element of the statute, the Court of Appeals stated that the sentencing court is "only fulfilling its

traditional role -- giving due consideration to agreed-upon factors -- in determining an

appropriate sentence within the permissible statutory range."  *Id*.

        In *Brown v. Greiner*, 409 F.3d 523 (2d Cir. 2005), the Second Circuit reversed a

judgment granting a writ of habeas corpus to a petitioner sentenced pursuant to § 70.10.  The

issue before the court was whether the state court's rejection of a Sixth Amendment challenge to

the statute was contrary to the then-clearly established law regarding the Sixth Amendment limits

on sentence enhancements.  Though *Brown* was decided in 2005, almost a year after the Supreme

Court decided *Blakely*, the caselaw relevant to the state court's review of the sentence at issue

17

pre-dated *Blakely*.  Thus, the Second Circuit specifically excluded *Blakely* and any subsequent

cases from its consideration.  409 F.3d at 533-34.[9]

      So constrained, *Brown* found *Rosen*'s rejection of the Sixth Amendment challenge

to § 70.10 to be a not-unreasonable application of *Apprendi*.  The Second Circuit specifically

adopted *Rosen*'s reasoning that the "factfindings" required by New York law with respect to "the

history and character of the defendant and the nature and circumstances of his criminal conduct"

are different in kind from the findings of fact traditionally submitted to juries.  *Id*. at 534.  Unlike

the invidious motivation in *Apprendi*, which the court termed "an essential element, or functional

equivalent" of the offense of conviction, "[t]he second determination to be made under New

York's persistent felony offender statute is of a very different sort.  It is a vague, amorphous

assessment of whether, in the court's 'opinion,' 'extended incarceration and life-time

supervision' of the defendant 'will best serve the public interest.'"  *Id*. (citing § 70.10(2)).

      *Brown* further observed that § 70.10 "does not enumerate any specific facts that

must be found by the sentencing court before it can conclude that the extended sentence is in the

public's 'best . . . interest.'"  *Id*. at 535.  According to *Brown*, the New York Court of Appeals

reasonably concluded "that such determinations regarding the defendant's history, character, and

offense fall into a different category from the essential statutory elements of heightened

sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's

*Apprendi* ruling."  *Id*.

---

    [9]    As was the case in *Brown*, it does not matter here whether the time to fix the clearly established law is the time of the relevant state court decision (the Appellate Division's May 16, 2005 affirmance) or months later, when Portalatin's conviction became "final" within the meaning of AEDPA.  *See* 409 F.3d at 533 n.3.  The parties agree that, either way, the clearly established law includes Supreme Court decisions prior to and including *United States v. Booker*, 543 U.S. 220 (2005).

Neither *Rosen* nor *Brown* constitutes a basis for the denial of habeas relief here. *Rosen* posits a world in which factfindings necessary to imposition of an enhanced sentence -- beyond the prior convictions that render the defendant merely eligible for one -- may be allocated between judge and jury by reference to the "traditional roles" of each. As elaborated upon by *Brown*, in that world, offense elements or their "functional equivalents" must be submitted to juries, but "amorphous" determinations regarding a defendant's history and character, and whether extended incarceration and life-time supervision are necessary, may properly be made by a preponderance of the evidence by judges. I accept, as I must, *Brown*'s holding that such a world constitutes a not-unreasonable application of *Apprendi*, but I think it clear that it is now contrary to (and objectively unreasonable in light of) *Ring* and *Blakely*.

In *Ring*, "the Supreme Court, in overruling *Walton* [*v. Arizona*, 497 U.S. 639 (1990)], . . . for the first time [made] clear that *all* facts (other than recidivism) that must be found in order to increase a sentence beyond the maximum -- regardless of whether they relate to the defendant's threshold eligibility for the increased sentence -- must be found by a jury beyond a reasonable doubt." *People v. Rivera*, 5 N.Y.3d 61, 72 (2005) (Kaye, C.J., dissenting), *cert. denied*, 126 S. Ct. 564 (2005).

Then, as discussed above, *Blakely* made it clear that the "statutory maximum" in Portalatin's case was 25 years, which was the maximum sentence he faced before the sentencing judge made the factfindings required by § 400.20(9). It does not matter what *type* of factfinding a judge makes; if a finding is "legally essential" to the enhanced sentence, the Sixth Amendment is violated unless that fact is either admitted by the defendant or found by a jury beyond a reasonable doubt. *Blakely*, 542 U.S. at 313.

That the foregoing was clearly established by *Ring* and *Blakely* was confirmed by

the Supreme Court's recent decision in *Cunningham v. California*, 127 S. Ct. 856 (2007).

*Cunningham* invalidated California's determinate sentencing law, which authorized an enhanced,

"upper term" sentence only upon the sentencing judge's finding of "circumstances in

aggravation," defined by law as "facts" other than elements of the offense of conviction. 127 S.

Ct. at 860. In upholding that regime against a Sixth Amendment challenge, the California

Supreme Court employed reasoning identical to the reasoning of *Rosen* and *Brown*. Specifically,

the California court had found

> a constitutionally significant distinction between a sentencing scheme that
> permits judges to engage in the type of judicial factfinding typically and
> traditionally involved in the exercise of judicial discretion employed in
> selecting a sentence from within the range prescribed for an offense, and a
> sentencing scheme that assigns to judges the type of factfinding role
> traditionally exercised by juries in determining the existence or
> nonexistence of elements of an offense.

*People v. Black*, 113 P.3d 534, 542 (Cal. 2005). That division of factfinding responsibility, the

California court reasoned, "afforded the sentencing judge the discretion to decide, with the

guidance of rules and statutes, whether the facts of the case and the history of the defendant

justify the higher sentence. Such a system does not diminish the traditional power of the jury."

*Id*. at 544.

The Supreme Court flatly rejected that reasoning, and it did so based on the

explicit admonition of *Blakely*:

> We cautioned in *Blakely* . . . that broad discretion to decide what facts may
> support an enhanced sentence, or to determine whether an enhanced
> sentence is warranted in any particular case, does not shield a sentencing
> system from the force of our decision. If the jury's verdict alone does not
> authorize the sentence, if, instead, the judge must find an additional fact to

impose the longer term, the Sixth Amendment requirement is not satisfied." *Cunningham*, 127 S. Ct. at 869 (citing *Blakely*, 542 U.S. at 305, and n.8).[10]

Similarly, *Blakely* makes clear that *Brown*'s reliance on the fact that § 70.10 "does not enumerate any *specific* facts that must be found by the sentencing court before it can conclude that the extended sentence is in the public's 'best . . . interest,'" *Brown*, 409 F.3d at 535 (emphasis added), was misplaced. The state made the same argument in *Blakely*, attempting to distinguish the sentencing provisions in *Apprendi* and *Ring*, which specified the eligible aggravating factors. The Supreme Court found this distinction to be "immaterial." *Blakely*, 542 U.S. at 305. As discussed above, the Court emphasized that the Sixth Amendment right is implicated when the finding of "some additional fact" -- whether it be a specified fact or "*any* aggravating fact" -- is necessary to authorize a sentence beyond what the jury verdict alone would allow. *Id.*

---

[10]      Respondent incorrectly asserts that *Cunningham* cannot be considered in evaluating this petition. In this regard, respondent's brief and oral argument both conflate two distinct requirements Portalatin (like all habeas petitioners) must satisfy: (1) he must exhaust his claim in state court; and (2) he must show that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established law as determined by the Supreme Court. Respondent's brief asserts that Portalatin cannot "claim that New York's persistent felony offender statute is unconstitutional under *Booker v. United States*, 543 U.S. 2200 (2005)," because "any such claim would be unexhausted because [Portalatin] did not fairly present this claim to the state courts." Resp. Mem. 11 n. 5. Counsel made the same argument orally regarding *Cunningham*.

The exhaustion requirement pertains to *claims*, not authorities. There is no dispute that Portalatin exhausted his claim that a sentence imposed pursuant to § 70.10 violates the Sixth and Fourteenth Amendment right to jury trial. Having done so, he may properly rely on all authorities available to him, including Supreme Court decisions filed after the state courts rejected his claim.

It is true that Portalatin must also establish that the rejection of his claim was contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court at the time of the state court decisions. Thus, Portalatin could not properly rely on *Cunningham* to "clearly establish" the principle he seeks to vindicate. But to the extent *Cunningham* or other recent decisions of the Supreme Court *apply* that principle in a manner that is instructive here, I am not only entitled to consider them but obligated to do so.

In sum, respondent finds no support in either *Rosen* or *Brown*.[11]  Respondent

concedes that, unlike *Brown*, the landscape of clearly established law in this case includes

*Blakely*.  *Rosen*'s holding that the factfindings required by § 70.10 and § 400.20 escape Sixth

Amendment scrutiny because they fall within the traditional role of judges cannot be squared

with *Blakely*.

E.    *People v. Rivera*

        After the Supreme Court decided *Blakely* and *Booker* (in June 2004 and January

2005, respectively), the New York Court of Appeals revisited § 70.10 in *People v. Rivera*, 5

N.Y.3d 61 (2005).  Specifically, the defendant in *Rivera* asked the court to overrule *Rosen* in

light of the intervening Supreme Court precedent.  The New York Court of Appeals declined to

do so.  5 N.Y.3d at 63.

        In opposition to Portalatin's petition, respondent contends that *Rivera* did nothing

more than reaffirm *Rosen*.  *See* Resp. Mem. 22 ("The decision of the New York Court of Appeals

in *Rivera* merely reaffirmed what the New York Court of Appeals had stated four years earlier in

*People v. Rosen*.").  If that were so, it might end the matter; as discussed above, *Rosen*'s (and

*Brown v. Greiner*'s) effort to justify certain types of judicial factfindings in the sentencing phase

on the ground that they fall within the "traditional role" of judges, *see Rosen*, 96 N.Y.2d at 335;

---

[11]        The same is true of *Brown v. Miller*, 451 F.3d 54 (2d Cir. 2006), on which respondent also relies.
That case, in which the "clearly established law" for habeas purposes included *Ring* but not *Blakely*, took the holding
in *Brown v. Greiner* one step further.  Specifically, it held that the Supreme Court's decision in *Ring* "did not
expound upon the rule announced in *Apprendi*" in a way that undermined *Brown v. Greiner*.  451 F.3d at 59.  The
court's rationale:  In *Apprendi* and *Ring*, judges had "to find specified facts" before imposing the enhanced sentence,
rather than engage in "the more general assessment required by the New York statute."  *Id*.  As discussed in the text
above, this rationale does not survive *Blakely*.  *See* 542 U.S. at 305 ("Whether the judge's authority to impose an
enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or
any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence.").

*Brown*, 409 F.3d at 534, may have been reasonable prior to *Blakely*, but it clearly does not survive that case.

But I see more in *Rivera* than respondent sees. Although it certainly reaffirmed *Rosen* (rather than overruling it), *Rivera* also appears to add to it. Edified by *Ring*, *Blakely* and *Booker*, which all came after *Rosen*, the New York Court of Appeals in *Rivera* did not merely rely on *Rosen's* analysis, it refined and added to that analysis in an effort to accommodate the intervening precedent. Like several other state high courts, the Court of Appeals tried gamely to retrofit a sentencing statute enacted decades ago into the rapidly developing Sixth Amendment doctrine.[13]

---

[13]     *See People v. Black*, 113 P.3d 534, 543 (Cal. 2005), *abrogated by Cunningham v. California*, 127 S. Ct. 856 (2007) (permitting enhancement above a presumptive middle term where the court finds the necessary aggravating circumstances, since the provisions of the California law "simply authorize a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range"); *State v. Lopez*, 123 P.3d 754, 768 (N.M. 2005) (permitting the alteration of the "basic sentence" based upon mitigating or aggravating circumstances found by the court, and where the statute requires a statement of reasons to be set forth in the record, since "[t]he mandatory language of [the statute] and [its] writing requirement were intended to limit the judge's sentencing discretion by imposing a standard of reasonableness, rather than creating a right in defendants to be sentenced to the basic sentence"); *Lopez v. People*, 113 P.3d 713, 730-31 (Colo. 2005) (enhancement above a presumptive range based upon "extraordinary aggravating circumstances" is applied constitutionally where prior conviction facts adequately support the aggravation, since "whether prior convictions are extraordinary aggravating circumstances is a determination made by the judge alone"); *State v. Gomez*, 163 S.W.3d 632, 660 (Tenn. 2005), *judgment vacated by Gomez v. Tennessee*, __ S. Ct. __, no. 05-296, 2007 WL 505800 (Feb. 20, 2007) (upholding Tennessee's guideline sentencing scheme that requires enhancement factors to be found prior to imposition of an enhancement since "the finding of an enhancement factor simply does not mandate an increased sentence").

Other courts have found sentencing schemes unconstitutional where a judicial finding is required before a court may enhance a sentence above a presumptive level. *See State v. Natale*, 878 A.2d 724, 739 (N.J. 2005) (concluding that since "[o]ur Code provisions make clear that, before any judicial factfinding, the maximum sentence that can be imposed based on a jury verdict or guilty plea is the presumptive term," and since "the 'statutory maximum' for *Blakely* and *Booker* purposes is the presumptive sentence," the presumptive terms should be severed from the statute so that the relevant statutory maximum is the top of the sentencing range for the crime charged); *Smylie v. State*, 823 N.E.2d 679, 683-85 (Ind. 2005) (because the trial court "must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed," the sentencing scheme violates *Blakely*, and the appropriate remedy is for the jury to find facts of aggravation); *State v. Shattuck*, 704 N.W.2d 131, 142 (Minn. 2005) (statute mandating minimum sentence that exceeds the presumptive range only when certain aggravating factors are found by the sentencing court violates the Sixth Amendment); *State v. Allen*, 615 S.E.2d 256, 265 (N.C. 2005), *withdrawn by* 635 S.E.2d 899 (N.C. 2006) (portions of statute that require the consideration of judicially found aggravating facts prior to imposing an enhanced sentence violate the Sixth Amendment, and must be severed).

Though *Rivera* is discussed in detail below, the effect of the case may be summarized as follows: whereas *Rosen* acknowledged that § 70.10 and § 400.20 condition the enhanced sentence on judicial factfindings, but found those factfindings to be of a type that may permissibly be assigned to judges, *Rivera* states that no such findings need be made at all, at least not in order to *impose* § 70.10's enhanced sentence. But *Rivera* leaves intact the factfindings mandated by § 70.10 and § 400.20, explaining that they are essential to the *review* of such sentences. "In practical terms," the court concluded, the legislative commands of the two statutes, and the findings they require regarding the defendant's "history and character" and the "nature and circumstances" of his conduct, "fall[] squarely within the most traditional discretionary sentencing role of the judge." *Rivera*, 5 N.Y.3d at 69.

In the end, *Rivera* does no more to remedy the constitutional defect in § 70.10 than did *Rosen*. *Rivera* raises questions concerning the deference owed to the Court of Appeals's interpretation of New York statutes and the deference owed under AEDPA to state court applications of federal law in reviewing convictions obtained in their courts. However, as discussed below, sentences imposed pursuant to § 70.10 violate the jury trial right of the defendant, and neither form of deference insulates respondent from a finding that the significant changes in the controlling doctrine in recent years have finally placed the discretionary persistent felony offender statute -- even as it is interpreted by *Rivera* -- in irreconcilable conflict with the Sixth Amendment.[14]

---

[14] Portalatin contends that even if *Rivera* altered § 70.10 in a manner that brings it in compliance with the right to trial by jury, the writ should issue because he was sentenced pursuant to the pre-*Rivera* version. Because I conclude § 70.10 does not survive habeas scrutiny, I need not address either this issue or the harmless error issue it would engender.

1.    *The Sentence in* Rivera

Rivera was convicted by a jury of unauthorized use of a vehicle in the second degree, a class E felony.  The prosecutor sought an enhanced sentence under § 70.10.  After finding beyond a reasonable doubt the requisite prior convictions, the sentencing court "declared defendant a persistent felony offender" and "then began the next phase of the proceeding, in which it heard argument concerning [Rivera's] history and character, and the nature and circumstances of his criminal conduct," to determine whether an enhanced sentence was appropriate.  5 N.Y.3d at 63-64.

That phase had actually begun earlier, with the court's filing of an order pursuant to § 400.20(3) directing a hearing to determine whether Rivera should be sentenced as a persistent felony offender.[15]  As required by that provision, the order annexed a statement setting forth (a) two prior convictions, which rendered Rivera eligible for the enhanced sentence, and (b) the factors in his background and criminal past that the court deemed relevant to the prospect of extended incarceration and lifetime supervision.  Attached to the statement were certificates of conviction for two of Rivera's prior stolen property felonies, one in 1993 and one in 1996.  Among the factors alleged to bear on the history and character of Rivera, and the nature and circumstances of his criminal conduct, were the following: Rivera had used aliases; he had absconded from a work release program in 1994; he had violated parole three times; and he had

_____

[15]    Most of the facts in this paragraph and the three that follow are not set forth in the *Rivera* decision, but rather have been gleaned from the People's brief to the Court of Appeals in that case.  *See* Resp. Mem. 6-10*, People v. Rivera*, 5 N.Y.3d 61 (2005).  Though the brief does not specify when in relation to the sentencing hearing the persistent felony offender statement was filed, § 400.20(3) requires at least 20 days' notice of the factors upon which the enhanced sentence will be considered.
        Counsel for respondent on this petition, who was also on the People's brief to the Court of Appeals in Rosen, graciously provided a copy of that brief at my request.

numerous other convictions (three felonies and 14 misdemeanors), mostly for theft-related offenses.

Before the sentencing hearing, both sides made written submissions to the court, and the court provided to the parties copies of probation reports from the 1993 and 1996 cases, which contained statements supportive of the contention that Rivera had made poor adjustments to parole supervision in the past and that such supervision had done little to deter him from committing crimes. The court also disclosed to counsel a copy of a 16 year-old probation report, prepared in connection with Rivera's first felony conviction, which contained an admission by Rivera that he had absconded in the case to avoid going to jail.

At the hearing itself, only the second part of the § 70.10 inquiry was disputed. That is, Rivera's counsel did not challenge the prior felonies and, as mentioned above, the court found them to have been proven beyond a reasonable doubt. Rivera's counsel did take issue with the second part of the § 70.10 determination. Specifically, counsel contended that any reliance on statements attributed to Rivera in the 1996 presentence report would be wrong, suggesting that Rivera might have been under the influence of narcotics at the time any such statements were made. Counsel further asserted that Rivera was no longer an addict, and that his criminal history, though extensive, was nonviolent and mitigated by his past addiction.

At the conclusion of the hearing, the sentencing judge concluded that an enhanced sentence was appropriate. Among the various findings it made on the record to support the enhanced sentence were (1) Rivera made inconsistent statements in his previous presentence reports about whether his father had abused him; (2) Rivera had been a probation and parole violator; (3) Rivera had been an absconder; (4) the 1996 probation report showed that Rivera had

told the probation officer that he stole to dress well and eat well, and that he could not picture

ceasing his life of crime; (5) the victim's ability to work was impeded by the crime; (6) there

were burglary tools in the carjacked car; and (7) Rivera had attempted to avoid apprehension by

fleeing.  After making those findings and concluding that extended incarceration and life

supervision were appropriate, the court sentenced Rivera to 15 years to life in prison.

2.      *The Court of Appeals's Decision*

As stated above, in rejecting Rivera's challenge to his enhanced sentence, the

Court of Appeals both reaffirmed *Rosen* and sought to adapt *Rosen*'s analysis to the Sixth

Amendment landscape that had since been modified by *Ring*, *Blakely* and *Booker*.  The result: a

new reliance on the need for factfindings in appellate review and a renewed reliance on the

notion that, notwithstanding those precedents, "the traditional discretionary sentencing role of the

judge" still embraces some authority to find facts that enhance sentences.  *Rivera*, 5 N.Y.3d at

69.

> The essential portions of the Court of Appeals's opinion are reproduced below:
>
> Under our interpretation of the relevant statutes, defendants are eligible for
> persistent felony offender sentencing based *solely* on whether they had two
> prior felony convictions.  Thus, as we held in *Rosen*, no further findings
> are required.  This conclusion takes defendant's sentence outside the scope
> of the violations described in *Apprendi* and its progeny.  The Supreme
> Court has held that a judge (as opposed to a jury) may find the fact of a
> defendant's prior conviction without violating the Sixth Amendment (*see
> Almendarez-Torres v. United States*, 523 U.S. 224, 226-227 (1998). . . .
> Here, the trial judge committed no Sixth Amendment violation by finding
> as fact that defendant had twice before suffered felony convictions.
>
> After determining defendant's status as a persistent felony offender, the
> court went on to consider other facts in weighing whether to impose the
> authorized persistent felony offender sentence. . . .

Nevertheless, the relevant question under the United States Constitution is not whether those facts were essential to the trial court's opinion (CPL 400.20(1)(b)), but whether there are any facts other than the predicate convictions that must be found to make recidivist sentencing possible (*see Blakely*, 542 U.S. at 303-304).   Our answer is no.  As we explained in *Rosen*, the predicate felonies are both necessary and sufficient conditions for imposition of the authorized sentence for recidivism; that is why we pointedly called the predicate felonies the "sole" determinant (96 N.Y.2d at 335).  By this unequivocal statement, we meant, and today confirm, that Criminal Procedure Law § 400.20 by authorizing a hearing on facts relating to the defendant's history and character, does not grant defendants a legal entitlement to have those facts receive controlling weight in influencing the court's opinion.  The statutory language requiring the sentencing court to consider the specified factors and to articulate the reason for the chosen sentence grants defendants a right to an airing and an explanation, not a result.

In this respect, our statutes are quite similar to the federal sentencing statute, which requires federal sentencing courts to consider various factors, including "the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)).  The Supreme Court recently upheld the statutory demand for sentencing courts to consider those factors, which do not require any jury factfinding (*see Booker*, 543 U.S. at 245-246 (op. of Breyer, J.)).

To reiterate our analysis in *Rosen*, a defendant adjudicated as a persistent felony offender has a statutory right to present evidence that might influence the court to exercise its discretion to hand down a sentence as if no recidivism finding existed, while the People retain the burden to show that the defendant deserves the higher sentence.  Nevertheless, once a defendant is adjudged a persistent felony offender, a recidivism sentence cannot be held erroneous as a matter of law, unless the sentencing court acts arbitrarily or irrationally.

The court's opinion is, of course, subject to appellate review, as is any exercise of discretion.  The Appellate Division, in its own discretion, may conclude that a persistent felony offender sentence is too harsh or otherwise improvident.  In this way, the Appellate Division can and should mitigate inappropriately severe applications of the statute.  A determination of that kind, however, is based not on the law but as an

exercise of the Appellate Division's discretion in the interest of justice as reserved uniquely to that Court (CPL 470.20(6)).[16]

In practical terms, the legislative command that sentencing courts consider the defendant's "history and character" and the "nature and circumstances" of the defendant's criminal conduct merely makes explicit what sentencing courts have always done in deciding where, within a range, to impose a sentence. The mandatory consideration and articulation of these facts is important in New York because, under Criminal Procedure Law § 470.20(6), the Appellate Division itself exercises discretion in reviewing sentences and ameliorating harshness, even when those sentences are justified as a matter of law. The components of our statutes that require a sentencing court, in reaching its opinion under C.P.L. § 400.20(1)(b), to consider the specified factors and explain why that consideration led the court to impose a recidivist sentence allows more complete review by the Appellate Division in the interest of justice. The practice, however, falls squarely within the most traditional discretionary sentencing role of the judge.

*Rivera*, 5 N.Y.3d at 67-69.

3.     *Analysis of* Rivera

The most important aspect of *Rivera* is that, despite its insistence that no factfindings (other than the fact of prior convictions) are necessary to make § 70.10's enhanced sentence possible, it leaves all of §§ 70.10 and 400.20 intact. Thus, those statutes still require that a defendant receive notice of the alleged facts (beyond the prior convictions) on which the enhanced sentence might be based, a hearing on the allegations the defendant disputes, and factfindings by a preponderance of the evidence by the sentencing court. The burden remains with the prosecutor, and the statutory requirement that the court "must . . . make such findings of fact as it deems relevant to the question of whether" the enhanced sentence is warranted is still in place. § 400.20(9).

---

[16]     N.Y. Crim. Proc. Law § 470.20(6), which applies to the appellate review of sentences generally, provides as follows: "Upon modifying a judgment or reversing a sentence as a matter of discretion in the interest of justice upon the ground that the sentence is unduly harsh or severe, the court must itself impose some legally authorized lesser sentence."

*Rivera* could have excised the factfinding requirements of § 400.20(9) (just as *Booker* excised 18 U.S.C. § 3553(b)(1)), and if it had, § 70.10's enhanced sentence might well have become authorized without the necessity of judicial factfindings. Instead, the factfindings are still mandated by statute, and *Rivera* contains two rationales for its conclusion that they do not offend the *Apprendi* principle.

First, *Rivera* suggests that factfindings that are necessary for New York's "interest of justice" appellate review of sentences do not implicate the jury trial right. The court explained as follows: "The mandatory consideration and articulation of these factors is important in New York because . . . the Appellate Division itself exercises discretion in reviewing sentences and ameliorating harshness . . ." 5 N.Y.3d at 69. But the *Apprendi* principle, as discussed above, is one of effect, not form. If, as remains the case in New York even after *Rivera*, a judge's authority to impose an enhanced sentence arises only after he or she makes one or more findings of fact, the jury trial right is violated. The Supreme Court's recent decision in *Cunningham* demonstrates what was already established by *Apprendi* and *Blakely*, namely, that judicial factfindings cannot be rescued from Sixth Amendment scrutiny by characterizing them as merely grist for appellate review of sentences (for "reasonableness" in federal court or by reference to the "interest of justice" in New York, *see* N.Y. Crim. Proc. Law § 470.20). Appellate review of sentences must "operate[ ] *within* the Sixth Amendment constraints delineated by [Supreme Court] precedent, not as a substitute for those constraints." 127 S. Ct. at 859. Where, as here, a sentencing system "allocates to judges sole authority to find facts permitting the imposition of" an enhanced sentence, the system violates the Sixth Amendment. *Id*. at 870. It elevates form over substance to assert that the findings are required to facilitate appellate review but not to

impose the sentence to begin with. "It is comforting, but beside the point," that New York's system allows sentence reductions on appeal in the interest of justice. *Id.* The point is that New York law continues to require that factfindings be made before the enhanced sentence is imposed.

That the sentencing court is not obligated to impose the enhanced sentence even if factual findings adverse to the defendant have been made appears to have mattered to the court in *Rivera*,[17] but it is irrelevant to the Sixth Amendment inquiry. As the Supreme Court observed in *Blakely*, it does not "matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. . . . Whether judicially determined facts *require* a sentence enhancement or merely *allow* it, the verdict alone does not authorize the sentence." 542 U.S. at 305 n.8.

*Rivera*'s second rationale merely perpetuates *Rosen*'s dichotomy between facts that are, or seem like, offense elements and facts about the offender that, outside the capital context, have "never fallen to juries." 3 N.Y.3d at 69 n.8. All of the "prohibited judicial findings" in *Ring*, *Blakely* and *Booker*, the court explained in *Rivera*, "relate to the crime for which the defendant was on trial." *Id.* Those factfindings, the court continued, are "readily distinguishable" from "consider[ing] holistically the defendant's entire circumstances and character, including traits touching upon the need for deterrence, retribution and rehabilitation unrelated to the crime of conviction." *Id.*

That dichotomy, as discussed above, cannot be squared with *Apprendi*'s rule. The rule says that any fact other than a prior conviction -- not other than an *offender characteristic* --

---

[17] The court observed that § 400.20 authorized a hearing on disputed facts, but it "does not grant defendants a legal entitlement to have those facts receive controlling weight."

that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. No matter how distant the facts at issue may be from the elements of the offense or their "functional equivalents," and no matter how "holistic" or "amorphous" the inquiry may be, if the sentencing court's authority to impose a persistent felony offender sentence is conditioned on factfindings that must be made by the court, such sentences cannot withstand Sixth Amendment scrutiny.[18]

Finally, *Rivera*'s observation that "our statutes are quite similar to the federal sentencing statute, which requires [consideration of] various factors, including 'the history and characteristics of the defendant,'" 5 N.Y.3d at 69, is true. But there is a critical dissimilarity. The advisory regime created by *Booker*, in which Guidelines ranges are only recommended, does not implicate the Sixth Amendment. *Cunningham*, 127 S. Ct. at 870. But under § 70.10 and § 400.20, the authority to enhance a sentence above the legislatively-established maximum sentence for the offense of conviction is still conditioned on judicial factfindings. As in *Cunningham*, where the sentencing judge could not sentence the defendant to more than 12 years "unless he found facts allowing the imposition" of the upper term sentence, 127 S. Ct. at 870, the sentencing judge here could not sentence Portalatin to a sentence in excess of 25 years unless she found facts as required by § 400.20.

---

[18]    I am mindful of the Court of Appeals's disclaimer of reliance on the distinction it identified between "quintessential facts questions" like those at issue in *Apprendi*, *Ring*, *Blakely* and *Booker* and the fact questions relating to the history and character of the defendant and the need for an enhanced sentence. 5 N.Y.3d at 69 n.8. Notwithstanding the disclaimer, the court ascribes significance to its view that the second stage of a § 70.10 sentence (*i.e.*, after the prior felonies are proven) amounts to nothing more than the "traditional discretionary sentencing role" that judges "have always" performed. 3 N.Y.3d at 69. But the "traditional" role judges played in the era of indeterminate sentencing has been ushered out by the "new trend in the legislative regulation of sentencing." *Booker*, 125 S.Ct. at 751. "The effect of the increasing emphasis on facts that enhanced sentencing ranges . . . was to increase the judge's power and diminish that of the jury." Those new sentencing practices led to the rule of *Apprendi* to ensure the preservation of the right to trial by jury. *Id.* at 752.

a.    Deference to the State Court's Interpretation of § 70.10

Respondent argues that I am bound by the New York Court of Appeals's construction of a New York statute.  I agree, and I am mindful of the deference federal courts must always accord state courts' interpretation of state statutes.  To the extent that the New York Court of Appeals defines or interprets the terms of § 70.10 and § 400.20, those determinations must control on habeas review.  Similarly, if that court were to excise part of a statute to render it compatible with the federal Constitution, a federal court on habeas review could properly revisit the determination of compatibility, but it would be bound by the excision.

However, the deference our federal system demands in this regard does not help respondent here.  Once any ambiguities as to the meaning of § 70.10 are resolved by the New York court, a federal court must reach its own judgment as to its operative effect.  *Wisconsin v. Mitchell*, 508 U.S. 476, 483-84 (1993).  The unambiguous text of § 400.20(9) still commands sentencing courts to make findings of fact before they may impose an enhanced sentence under § 70.10.  Although *Rivera* casts those factfindings as essential to appellate review, rather than to the initial imposition of sentence, it nevertheless leaves them as a "mandatory" part of the statutory scheme.  3 N.Y.3d at 69.  That feature of the scheme compels my conclusion here.[19]

Put another way, I defer to the Court of Appeals's conclusion with respect to what § 70.10 means, but I do not defer to its determination that, "[i]*n practical terms*, the legislative command" that findings of fact be made does not violate the jury trial right.  *Id.*; s*ee also*

---

[19]    Among respondent's least persuasive arguments is the claim that "implicit" in § 400.20(9)'s mandate to find such facts as the sentencing court "deems relevant" is that no facts need be found at all.  Resp. Mem. 17.  According to respondent, if a sentencing court decides that no facts are relevant to the decision to make the enhanced sentence, it need not find any and can impose the sentence anyway.

This frivolous argument makes a hash of § 400.20(9)'s mandatory language and obliterates § 400.20(10).  More importantly, as discussed in the text, *Rivera* itself acknowledges the "mandatory" factfindings § 400.20(9) requires.  5 N.Y.3d at 70.

*Mitchell*, 508 U.S. at 483-84 ("[H]ere the Wisconsin Supreme Court did not, strictly speaking, construe the Wisconsin statute in the sense of defining the meaning of a statutory word or phrase. Rather, it merely characterized the 'practical effect' of the statute for First Amendment purposes. . . . This assessment does not bind us."). The Court of Appeals's analysis, *i.e.*, that the statute merely aims to make explicit "what sentencing courts have always done," *Rivera*, 3 N.Y.3d at 57, and thus does not have unconstitutional effects, does not preempt my independent obligation to assess the constitutionality of the statute as the court itself construed it.

> b.      AEDPA Deference

Finally, respondent contends that *Rivera* is entitled to another form of deference -- AEDPA deference. Specifically, respondent argues that it is not enough for Portalatin to demonstrate that the state courts' rejection of his jury trial claim misapplied the *Apprendi* principle; he must further demonstrate that the misapplication was objectively unreasonable, and he has failed to do so here. Respondent's argument fails for two reasons.

First, the state court's rejection of Portalatin's claim was contrary to clearly established federal law. The New York courts decided the Sixth Amendment claim on direct appeal differently than the Supreme Court has on multiple sets of materially indisguishable facts. *Apprendi*'s holding was that any fact, other than a prior conviction, that increases the maximum penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. That principle was applied in that case to invalidate a sentence enhancement that was authorized only by the sentencing judge's finding as to the defendant's mental state. It was applied in *Ring* to invalidate a death sentence that was authorized only by the sentencing judge's findings of several aggravating factors. *Blakely* applied it to invalidate an enhanced sentence that was authorized by

the finding that the defendant acted with deliberate cruelty. *Booker* applied the principle to invalidate the elevation of a mandatory Guideline range that was authorized only by the sentencing judge's findings that additional narcotics were involved and the defendant obstructed justice.

Here, the facts are not materially distinguishable. Portalatin was subjected to a sentence enhancement that was authorized only by the sentencing judge's finding that extended incarceration and lifetime supervision would best serve the public interest. That finding was itself predicated on other required findings of fact by the sentencing judge. The rejection of Portalatin's constitutional challenge to his sentence was contrary to the clearly established *Apprendi* holding.

The foregoing assumes that Portalatin's case (and *Rivera*) are not "run-of-the-mill state-court decision[s] applying the correct legal rule" of *Apprendi* to the persistent felony offender statute. *Williams*, 529 U.S. at 406. If they are, they do not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause, and thus should be assessed under its unreasonable application clause." *Id.* Viewed from that perspective, the question is whether the New York courts unreasonably applied *Apprendi* to persistent felony offender sentences. *Id.* at 413. For the same reasons discussed above, I conclude that the state courts' decision was an objectively unreasonable application of the *Apprendi* rule. Even if that were not clear prior to *Blakely* and *Booker*, *see Brown v. Greiner*, 409 F.3d 523 (2d Cir. 2005); *Brown v. Miller*, 451 F.3d 54 (2d Cir. 2006), it became so in light of those decisions.

Respondent's harmlessness argument has no merit. Since the sentencing court could not, consistent with Portalatin's jury trial right, sentence him to up to life in prison, I reject

the contention that the sentencing court would have imposed the same sentence despite the constitutional violation.

$$* \qquad * \qquad * \qquad * \qquad *$$

If it wanted to, New York could, consistent with *Apprendi*, subject all persons convicted of a felony who have two prior (nonviolent) felony convictions to the possibility of life in prison. *See Apprendi*, 530 U.S. at 498 (Scalia, J., concurring) ("I think it not unfair to tell a prospective felon that if he commits his contemplated crime he is exposing himself to a jail sentence of 30 years -- and that if, upon conviction, he gets anything less than that he may thank the mercy of a tenderhearted judge. . . . Will there be disparities? Of course. But the criminal will never get *more* punishment than he bargained for when he did the crime, and his guilt of the crime (and hence the length of the sentence to which he is exposed) will be determined *beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens*.").

New York could also guide the discretion of sentencing courts in those cases by telling them to consider the history and character of the defendant and the nature and circumstances of his criminal conduct in determining whether extended incarceration and life-time supervision will best serve the public interest. *See id.* at 481 ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.").

From the perspective of the defendant being sentenced, a sentencing scheme like the one described above might be indistinguishable from the one currently in place: judges would likely consider the same factors at the same phase of the proceedings, and may even reach the same results. But the critical difference would be that the *jury's* factual findings, not the judge's, would fix the upper limits of sentencing authority. Where, as under § 70.10 and so many other statutes enacted during the trend toward determinate sentencing, the upper limits are only expanded upon factfindings made by the judge, the jury no longer stands between the defendant and the power of the government. As the Supreme Court stated in *Booker*, the invalidation of such statutes is not "motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." 125 S. Ct. at 752.

## CONCLUSION

For the foregoing reasons, Portalatin's petition is granted. The state court is directed to vacate his sentence and to resentence him in proceedings consistent with this decision. If respondent files a notice of appeal, the relief granted herein is stayed pending the outcome of the appeal.

So ordered.


John Gleeson, U.S.D.J.



Dated: March 22, 2007
        Brooklyn, New York

Appendix

**N.Y. Penal Law § 70.10 (McKinney 1965)**
**Sentence of Imprisonment for Persistent Felony Offender**

1. Definition of persistent felony offender.

(a) A persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and (c) of this subdivision.

(b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in any other jurisdiction, provided:

(i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor; and

(ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony; and

(iii) that the defendant was not pardoned on the ground of innocence; and

(iv) that such conviction was for a felony offense other than persistent sexual abuse, as defined in section 130.53 of this chapter.

(c) For the purpose of determining whether a person has two or more previous felony convictions, two or more convictions of crimes that were committed prior to the time the defendant was imprisoned under sentence for any of such convictions shall be deemed to be only one conviction.

2. Authorized sentence. When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04 or 70.06 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record.

**N.Y. Crim. Proc. Law § 400.20 (McKinney 1970)**
**Procedure for Determining Whether Defendant Should be Sentenced as a Persistent Felony Offender**

1. Applicability. The provisions of this section govern the procedure that must be followed in order to impose the persistent felony offender sentence authorized by subdivision two of section 70.10 of the penal law. Such sentence may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.

2. Authorization for hearing. When information available to the court prior to sentencing indicates that the defendant is a persistent felony offender, and when, in the opinion of the court, the available information shows that a persistent felony offender sentence may be warranted, the court may order a hearing to determine (a) whether the defendant is in fact a persistent felony offender, and (b) if so, whether a persistent felony offender sentence should be imposed.

3. Order directing a hearing. An order directing a hearing to determine whether the defendant should be sentenced as a persistent felony offender must be filed with the clerk of the court and must specify a date for the hearing not less than twenty days from the date the order is filed. The court must annex to and file with the order a statement setting forth the following:

>    (a) The dates and places of the previous convictions which render the defendant a persistent felony offender as defined in subdivision one of section 70.10 of the penal law; and

>    (b) The factors in the defendant's background and prior criminal conduct which the court deems relevant for the purpose of sentencing the defendant as a persistent felony offender.

4. Notice of hearing. Upon receipt of the order and statement of the court, the clerk of the court must send a notice of hearing to the defendant, his counsel and the district attorney. Such notice must specify the time and place of the hearing and the fact that the purpose of the hearing is to determine whether or not the defendant should be sentenced as a persistent felony offender. Each notice required to be sent hereunder must be accompanied by a copy of the statement of the court.

5. Burden and standard of proof; evidence. Upon any hearing held pursuant to this section the burden of proof is upon the people. A finding that the defendant is a persistent felony offender, as defined in subdivision one of section 70.10 of the penal law, must be based upon proof beyond a reasonable doubt by evidence admissible under the rules applicable to the trial of the issue of guilt. Matters pertaining to the defendant's history and character and the nature and circumstances

of his criminal conduct may be established by any relevant evidence, not legally privileged, regardless of admissibility under the exclusionary rules of evidence, and the standard of proof with respect to such matters shall be a preponderance of the evidence.

6. Constitutionality of prior convictions. A previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the Constitution of the United States may not be counted in determining whether the defendant is a persistent felony offender. The defendant may, at any time during the course of the hearing hereunder controvert an allegation with respect to such conviction in the statement of the court on the grounds that the conviction was unconstitutionally obtained. Failure to challenge the previous conviction in the manner provided herein constitutes a waiver on the part of the defendant of any allegation of unconstitutionality unless good cause be shown for such failure to make timely challenge.

7. Preliminary examination. When the defendant appears for the hearing the court must ask him whether he wishes to controvert any allegation made in the statement prepared by the court, and whether he wishes to present evidence on the issue of whether he is a persistent felony offender or on the question of his background and criminal conduct. If the defendant wishes to controvert any allegation in the statement of the court, he must specify the particular allegation or allegations he wishes to controvert. If he wishes to present evidence in his own behalf, he must specify the nature of such evidence. Uncontroverted allegations in the statement of the court are deemed evidence in the record.

8. Cases where further hearing is not required. Where the uncontroverted allegations in the statement of the court are sufficient to support a finding that the defendant is a persistent felony offender and the court is satisfied that (a) the uncontroverted allegations with respect to the defendant's background and the nature of his prior criminal conduct warrant sentencing the defendant as a persistent felony offender, and (b) the defendant either has no relevant evidence to present or the facts which could be established through the evidence offered by the defendant would not affect the court's decision, the court may enter a finding that the defendant is a persistent felony offender and sentence him in accordance with the provisions of subdivision two of section 70.10 of the penal law.

9. Cases where further hearing is required. Where the defendant controverts an allegation in the statement of the court and the uncontroverted allegations in such statement are not sufficient to support a finding that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, or where the uncontroverted allegations with respect to the defendant's history and the nature of his prior criminal conduct do not warrant sentencing him as a persistent felony offender, or where the defendant has offered to present evidence to establish facts that would affect the court's decision on the question of whether a persistent felony offender sentence is warranted, the court may fix a date for a further hearing. Such hearing shall be before the court without a jury and either party may introduce evidence with respect to the controverted allegations or any other matter relevant to the issue of whether or not the defendant should be sentenced as a persistent felony offender. At the conclusion of the hearing the court must make a

finding as to whether or not the defendant is a persistent felony offender and, upon a finding that he is such, must then make such findings of fact as it deems relevant to the question of whether a persistent felony offender sentence is warranted. If the court both finds that the defendant is a persistent felony offender and is of the opinion that a persistent felony offender sentence is warranted, it may sentence the defendant in accordance with the provisions of subdivision two of section 70.10 of the penal law.

10. Termination of hearing. At any time during the pendency of a hearing pursuant to this section, the court may, in its discretion, terminate the hearing without making any finding. In such case, unless the court recommences the proceedings and makes the necessary findings, the defendant may not be sentenced as a persistent felony offender.